UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARLEN JOHNSON,
        Plaintiff,

v.

NANCY A. BERRYHILL,
        Defendant.

---



DECISION & ORDER
17-cv-6470

## Preliminary Statement

Plaintiff Darlen Johnson ("plaintiff" or "Johnson") brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), which denied her application for disability insurance benefits. See Complaint (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 10, 12. On May 14, 2018 the Court heard oral arguments on the motions and, after considering the briefs and the arguments of counsel, issued an oral decision remanding the case back to the Commissioner for further proceedings. This written Decision and Order is intended to confirm the Court's prior ruling. For the reasons explained at the hearing and set forth more fully below, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 12) is **denied** and the case is remanded to the Commissioner for further proceedings.

1

## Discussion

In 2005, plaintiff was found unconscious and cyanotic and was transported to the hospital. Administrative Record (Docket # 8) ("AR"), at 20. She remained in a coma for 24 hours and suffered an anoxic brain injury, all apparently caused by an asthma attack. Her difficulties since that time are well-documented in the record. The record pays tribute to the fact that plaintiff has experienced significant mental and emotional limitations that substantially affect her ability to work.

<u>Ms. Johnson's Letter</u>: Perhaps the best description of plaintiff's functioning comes from the individual who has the most contact with her - her mother. Sylvia Johnson was present at plaintiff's hearing before Administrative Law Judge Laureen Penn ("the ALJ"). Plaintiff's counsel attempted to call Ms. Johnson as a witness, but the ALJ deferred, indicating that she would hear from plaintiff's mother if she needed additional testimony. Having not testified at the hearing, Ms. Johnson wrote a letter to the ALJ three days after the hearing. I recognize that this letter was written by plaintiff's mother, but believe that it accurately summarizes the behavior and neurological defects from which plaintiff suffers, written by someone who has not only observed her daughter's disabilities but also is a trained medical professional. Mrs. Johnson described some of plaintiff's issues as follows:

2

In December 2012, her cousin got her a job at a local pizza parlor but her symptoms of facial pain became severe to where she would call me crying. I would often have to get her because she couldn't walk home due to the pain along with confusing pizza orders and would panic. Her vertigo developed soon after, along with regular panic attacks, depression, insomnia, etc. She has always had a hard time holding a permanent job in the past or completing formal education, and driving instruction, primarily due to memory, panic, migraine, and asthma issues. . . . I have set up cues to assist her memory, such as a chalkboard near the kitchen with daily tasks to complete . . . . She often has to go back to our car while shopping due to a panic attack. I've obtained a gym membership for her because she loves to swim but the cold water exacerbates her trigeminal neuralgia . . . . Large crowds or crowded buildings are a trigger for panic attacks. . . . She wants to return to school, but we tried it four years ago; I took up a class with her for her first class, but after that, she missed too many classes, didn't understand her homework, and couldn't pass exams. She doesn't watch television, go to the movies, play video games, or read anymore.

AR at 718-19.

The ALJ's failure to give Ms. Johnson's letter significant weight was error. "'In determining whether a claimant is disabled, an ALJ is required to consider lay witness testimony concerning a claimant's ability to work." Bostic v. Astrue, No. 03:10-CV-01153-HU, 2012 WL 786828, at *20 (D. Or. Feb. 8, 2012), report and recommendation adopted as modified, No. 3:10-CV-01153-HU, 2012 WL 786909 (D. Org. Mar. 9, 2012) (citing Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)). "Such testimony is competent evidence which cannot be disregarded without specific reasons that are germane to each witness. Id. (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006)).

3

The ALJ only gave Ms. Johnson's letter "some weight" because she believed that the statements in the letter were inconsistent with plaintiff's own reports. Yet the ALJ found that plaintiff suffered from the following severe impairments: depression, anxiety, asthma, trigeminal neurologia, vertigo and neurocognitive disorder secondary to her anoxic brain injury. All of these severe impairments are consistent with Ms. Johnson's observations of her daughter and with the medical evidence in the record. Failure to accord more weight to this letter was error.

Medical Opinions: In addition to the first-hand observations of Ms. Johnson, the ALJ was also presented with medical evidence and opinion evidence from plaintiff's treating doctor. On January 21, 2014, Dr. Seema Khaneja, an internist, conducted a medical examination of plaintiff and prepared a brief written report. Dr. Khaneja found plaintiff to be in reasonable physical condition, but noted neurological defects. She noted that "[t]he claimant at some points did forget instructions of moving specifically her extremities and instructions needed to be repeated. The claimant also had difficulty remembering certain parts of medical history." AR at 536. Even though the doctor deferred the rest of the mental status exam, she did diagnose plaintiff with a anoxic/traumatic brain injury, vertigo and panic attacks. She found plaintiff's prognosis to be "fair." AR at 536.

That same day, plaintiff was also psychologically evaluated

4

by Adam Brownfeld, PhD. AR at 539. Like Dr. Khaneja, Dr. Brownfeld found cognitive impairments, stating that plaintiff's recent and remote memory skills "were impaired due to cognitive deficits." AR at 540. Dr. Brownfeld concluded that plaintiff would be "moderately limited in maintaining a regular schedule, learning new tasks, performing complex tasks independently and appropriately dealing with stress." AR at 541. These difficulties, according to Dr. Brownfeld, "are caused by cognitive and psychiatric deficits." AR at 541. Dr. Brownfeld's diagnosis included neurocognitive disorder due to anoxic brain injury, anxiety disorder, vertigo, depressive disorder and asthma. AR at 541. Dr. Brownfeld recommended an IQ evaluation that does not appear to have been done.

Most troubling to the Court was the ALJ's consideration of plaintiff's treating doctor and metal health therapist. For in addition to the one-time consultative examinations, plaintiff also submitted reports, opinions and test results from her treating physician and therapist. On December 19, 2013, Dr. Elizabeth Loomis, plaintiff's treating doctor, completed a four-page medical source report. She noted that she was plaintiff's treating physician and had seen plaintiff nine times over the past year. AR at 480. She described plaintiff as having "worsening critical thinking and memory problems" and vertigo. AR at 480. Dr. Loomis indicated that medications had been "ineffective" and a neurology

consult was "in progress." AR at 480. She said plaintiff also suffered from anxiety and emotional factors contribute to her functional limitations. AR at 480. As to specific work-related limitations, Dr. Loomis opined that plaintiff would need two to three unscheduled breaks of 5-20 minutes during a working day due to vertigo and would be "off task" in terms of inability to give attention and concentration to even simple work tasks 15 percent in a typical work day. AR at 581. Although Dr. Loomis found plaintiff capable of "low stress" work, she would have good days and bad days and would likely miss about three days per month from work as a result of her "current cognitive and psychological condition." AR at 483.

On January 23, 2014, two days after plaintiff was evaluated by Dr. Khaneja and Dr. Brownfeld, Dr. Loomis completed a Medical Assessment for Determination of Employability for the Monroe County Department of Human Services. Dr. Loomis reported that plaintiff suffered a "traumatic brain injury at age 21" and "has been experiencing worsening memory problems and vertigo." AR at 544. She wrote that in her opinion, plaintiff was unable to participate in activities except treatment or rehabilitation, at least for 12 months. Dr. Loomis listed plaintiff's prognosis for memory problems due to traumatic brain injury as "unknown at this time." AR at 545.

Plaintiff also had long-term mental health treatment.

Objective test results from those treatment records are consistent with heightened anxiety and depression. For example, plaintiff was administered the PHQ-9 depression test, which yielded a score of 16 on January 17, 2014 (AR at 552); 14 on June 4, 2014 (AR at 731); 11 on February 19, 2015 (AR at 649) and 13 on May 14, 2015 (AR at 686). A score of 16 is indicative of severe depression. Similarly, plaintiff's therapist administered the GAD-7 test during her mental health appointments. GAD-7 is a valid screening tool for assessing severity of anxiety in clinical practice. Scores range from 0-21, with a score of 15 indicating severe anxiety. All of plaintiff's scores registered above 15 from early 2014 to mid-May 2015, with the highest score coming in at 21. AR at 559 (score of 21 on January 17, 2014); AR at 17 (score of 17 on March 26, 2014); AR at 726 (score of 19 on April 6, 2014); AR at 649 (score of 16 on February 19, 2015); AR at 686 (score of 20 on May 14, 2015). These records show heightened and sustained anxiety throughout the entirety of the record period. Finally, an electroencephalography ("EEG") performed on April 10, 2015 was abnormal, suggesting "the possibility of mild left temporal abnormalities." AR at 666. A follow-up EEG several weeks later was abnormal "due to intermittent slowing in the left frontal temporal lobe region during wake and drowsy states." AR at 670.

The ALJ's discussion of the opinion evidence from treating medical providers is inconsistent with the weight that should be

accorded this medical evidence as compared to non-treating physician evidence. The ALJ gave "some weight" to the opinion of a non-treating, non-examining psychologist. This was error. This "consultant," who never saw or spoke to plaintiff, opined that plaintiff would have only "moderate difficulties with complex tasks and learning new tasks." AR at 74. Giving any weight to this opinion - in light of the medical evidence set forth above and the weight given to plaintiff's treating physician - was error. "In the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis to personally observe the patient." Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) (remand required where ALJ credited a psychiatric opinion "based on a review of a cold, medical record"); see Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.").

Equally troublesome was the ALJ's decision to give the opinion of plaintiff's treating physician precisely the same weight as the non-treating, non-examining doctor. This too was error for a variety of reasons. First, the ALJ's analysis of Dr. Loomis's opinions violated the treating physician rule. The treating physician rule, set forth in the Commissioner's own regulations,

8

"mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). See 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources."). Where, as here, an ALJ gives a treating physician opinion something less than "controlling weight," she must provide good reasons for doing so. Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)(per curiam)("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.").

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

To override the opinion of the treating physician, we

have held that the ALJ must <u>explicitly</u> consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ <u>must comprehensively set forth his reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015)(emphasis added)(internal citations, quotations and alterations omitted).

The ALJ failed to "comprehensively set forth" her reasons for not giving controlling weight to the long-time treating physician. Indeed, the ALJ fails to discuss or mention three of the four factors required factors described above. The only reason given by the ALJ for limiting the opinion of the treating physician was that plaintiff's "own reports of the frequency of her symptoms" (AR at 75) as to her difficulties with memory and vertigo was not consistent with her testimony or statements she made to medical providers.

This reasoning is not supported by substantial evidence. Indeed, it conflicts with various medical records discussed above, including those submitted by Dr. Brownfeld (AR at 541) and Dr. Khaneja (AR at 536), and plaintiff's own hearing testimony (AR at 88, 89, 97). The ALJ also claimed, as justification for

10

discrediting evidence that would tend to show plaintiff as more limited, that plaintiff could take public transportation. AR at 74. That assertion is also belied by the hearing evidence. AR at 100-01.

After improperly assigning the same weight to non-examining physicians and the treating physician, the ALJ gave <u>great weight</u> to the opinions of the consultative examiners. Again, in the context of the overall record here, this was error.

> Under the statute, a "nontreating source" is defined as a "physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 416.902. In general, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." <u>Selian</u>, 708 F.3d 409, 419 (2013). This is because "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." <u>Cruz v. Sullivan</u>, 912 F.2d 8, 13 (2d Cir. 1990).

<u>Corona v. Berryhill</u>, No. 15-CV-7117 (MKB), 2017 WL 1133341, at *14 (E.D.N.Y. Mar. 24, 2017); <u>see also</u> <u>Giddings v. Astrue</u>, 333 F. App'x 649, 652 (2d Cir. 2009) ("We also acknowledge that generally, 'in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight.'") (quoting <u>Cruz v. Sullivan</u>, 912 F.2d 8, 13 (2d Cir. 1990)).

The opinions of Dr. Khaneja and Dr. Brownfeld were brief and were not drafted with the benefit of a long treating relationship or a review of plaintiff's medical history. There is nothing in

11

the record to indicate that these consultative opinions should get more weight than that of plaintiff's treating physician.

## Conclusion

For the reasons explained above, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 12) is **denied** and the case is remanded for further proceedings consistent with this Decision & Order.

                                             _____
                                             JONATHAN W. FELDMAN
                                             United States Magistrate Judge

Dated:  June 7, 2018
        Rochester, New York